UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**KABUKI INDUSTRIES, INC.**                                                                       **PLAINTIFF**

v.                                                                                                                 No. 3:19-cv-00063-BJB-LLK

**OHIO SECURITY INSURANCE COMPANY**                                      **DEFENDANT**

<u>**Memorandum Opinion and Order**</u>

After a hailstorm damaged HVAC units serving a restaurant it operated, Kabuki Industries asked its landlord to replace them.  The landlord declined, citing Kabuki's lease obligation to maintain and replace the units.  So Kabuki asked its property insurer, Ohio Security Insurance, to cover the cost of replacement.  Ohio Security denied coverage, and Kabuki filed this lawsuit seeking a declaratory judgment that the policy covers the HVAC damage.

Ohio Security was correct, however, in interpreting the insurance policy to cover only Kabuki's "personal property"—which the HVAC units are not.  The units sat atop the building when Kabuki arrived, and presumably they (or their replacements) will stay on the building when Kabuki's lease expires.  Because the HVAC units are not "[l]eased personal property" that Kabuki has a "contractual responsibility to insure," the policy provision at issue does not cover their damage, and the Court **GRANTS** Ohio Security's motion for partial summary judgment [DN 25].

**A. The hailstorm and the contracts**

Kabuki is a restaurant business.  It leases space in an Elizabethtown shopping center, where it operates Kansai Japanese Steakhouse, a sushi and hibachi restaurant.  Complaint [DN 1-1] at 4, ¶ 4.  Six rooftop HVAC units serve the shopping center; four specifically serve the restaurant; and all were in place before Kabuki entered into its lease in 2014.  Jason Zheng Deposition [DN 25-1]

1

at 25:20–23, 30:11–12.  Kabuki's lease nevertheless requires Kabuki to "maintain and take good care of the . . . heating, air conditioning[,] and ventilation systems . . . including making replacements when necessary."  Lease [DN 25-2] at 9, § 6.1.

Ohio Security insured Kabuki under a commercial-property policy.  That policy indicates that Ohio Security offered several categories of insurance coverage, but Kabuki purchased only a few—including "Business Personal Property," "Tenant Improvements and Betterments," and "Equipment Breakdown."  Insurance Policy [DN 25-3] at 35–38.

A hailstorm damaged the HVAC units, apparently beyond repair, in May 2017.  Complaint at 5, ¶ 5.  Kabuki separately asked both the landlord and Ohio Security to cover the damage, but each pointed a finger at the other.  According to emails in the record, the landlord relied on the lease's maintenance provisions and asserted that Kabuki (or else its insurer) was responsible for any HVAC unit replacement.  DNs 28-4, -6.  Ohio Security pushed back, noting that the "[h]ail damage" was as "a casualty issue" the landlord was required to insure.  DN 28-3.

After this back-and-forth, Kabuki sued Ohio Security.[1]  Citing only a single provision in the insurance policy, Kabuki's complaint seeks a declaratory judgment that the "Business Personal Property" coverage in the insurance policy compels Ohio Security to replace the HVAC units.  Complaint ¶ 12.  It also requests damages, attorney fees, and a ruling that the insurer violated its duty of good faith and fair dealing.  ¶¶ 19, 20, 23.

Kabuki originally sued in state court.  Its complaint did not specify the damages it sought, consistent with the instruction of Kentucky Rule of Civil Procedure 8.01(2): "In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount

---

[1] Kabuki's original lawsuit incorrectly named Liberty Mutual Insurance as the defendant.  The parties later substituted Ohio Security as the proper defendant.  [DN 6; DN 7].

2

necessary to establish the jurisdiction of the court . . . ." The complaint stated only that Kabuki sought damages "up to the recoverable policy limits." Complaint ¶ 9.

Ohio Security removed the case to federal court, invoking this Court's diversity jurisdiction. 28 U.S.C. §§ 1332, 1441(a). Three weeks later, the parties jointly moved to remand the case back to state court based on a stipulation that Kabuki "w[ould] not request, accept, seek to enforce, or be entitled to enforce" more than $75,000 in damages. Stipulation of Damages [DN 8-1]. The Court rejected that request, however, noting that at the time of removal, Kabuki's complaint likely satisfied the amount-in-controversy requirement because the policy potentially entitled Kabuki to recover more than $200,000. *See* Order Denying Remand [DN 9] at 3; Insurance Policy [DN 25-3] at 37. The Order concluded that "[t]he parties may not use a stipulation to reverse the defendant's tactical decision to remove this case." Order at 2. The Court examined the jurisdictional amount-in-controversy at the time of removal, not at the time of the stipulation, citing the Sixth Circuit's decision in *Rogers v. Wal-Mart Stores*, 230 F.3d 868, 871–72 (6th Cir. 2000).

Since then, Ohio Security has moved for partial summary judgment, the Chief Judge reassigned this case to a new judge, and the parties have not offered any basis for the Court to revisit the jurisdictional decision or its interpretation of the state of the damages request. The Court now addresses Ohio Security's argument that the policy provision Kabuki relies on does not cover the HVAC units. Summary Judgment Motion [DN 25].

**B. The law governing Ohio Security's summary judgment motion**

Rule 56(a) of the Federal Rules of Civil Procedure requires that the court grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Kentucky law, which the parties agree

3

applies here, interpreting an insurance contract typically raises a question of law suitable for resolution on summary judgment. *See Liberty Mut. Ins. Co. v. Bobzien ex rel. Hart*, 377 F. Supp. 3d 723, 735 (W.D. Ky. 2019) ("The interpretation of insurance contracts in Kentucky is a matter of law for the court, and in the absence of factual disputes, may be determined on summary judgment."). The "plain and ordinary meaning" of the contract controls, and courts enforce the contract "strictly according to its terms," unless the contract language proves ambiguous. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). "Policies should be interpreted according to the parties' mutual understanding at the time they entered into the contract and such mutual intention is to be deduced, if possible, from the language of the contract alone." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131–32 (Ky. 1999) (quotation omitted)).

**C. The HVAC units are not "Business Personal Property" covered by the insurance contract**

The parties agree that Ohio Security insures Kabuki's "Business Personal Property." The dispute is whether the HVAC units are Business Personal Property. The policy explicitly describes nine different species of potentially covered property, though Kabuki relies on only one—subsection 7—here: "Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others[.]" *See* Complaint ¶ 12.[2]

---

[2] The Court of course addresses only subsection 7, as the dispute is limited to this single subsection. The complete provision (found in the Insurance Policy [DN 25-3] at pp. 90, 137) states:

> Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure[:]
>     (1) Furniture and fixtures;
>     (2) Machinery and equipment;
>     (3) "Stock";
>     (4) All other personal property owned by you and used in your business;
>     (5) Labor, materials or services furnished or arranged by you on personal property of others;
>     (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations, or additions:
>         (a) Made a part of the building or structure you occupy but do not own; and

4

Kabuki contends the HVAC units are "[l]eased personal property" that Kabuki has a "contractual responsibility to insure." Opposition [DN 28] at 4, 8. But Kabuki identifies no contractual obligation that it insure the HVAC units. Section 3.5 of its lease agreement provides:

> 3.5 <u>Personal Property Insurance</u>. Tenant shall maintain in full force and effect insurance covering all of Tenant's furniture and fixtures, machinery, equipment, stock, and any other personal property owned and used in Tenant's business and found in, on, or about the Premises, and any leasehold improvements to the Premises.

Lease at 5.

The section header ("Personal Property Insurance"), the initial modifier ("Tenant's"), and the residual clause ("any *other* personal property") together make clear that the insurance requirement applies only to Kabuki's own property. *See* Antonin Scalia & Bryan A. Garner, *Reading Law* 147 (series-qualifier canon), 195 (associated-words canon), and 221 (Title-and-Headings Canon) (2012); *cf. Wheeler & Clevenger Oil Co. v. Washburn*, 127 S.W.3d 609, 613 (Ky. 2004) (state statute's "title may be considered in its interpretation").

No one argues that the HVAC units belong to Kabuki. Kabuki did not install the HVAC units; it did not buy them from the landlord; it could not carry them off if it quit the lease tomorrow. *See* Zheng Deposition at 25:15–23; 31:15–23. Kabuki's own brief acknowledged that "it is clear that the air conditioning units were the personal property of the landlord." Opposition at 6; *see*

---

(b) You acquired or made at your own expense but cannot legally remove;
(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others; . . .
(8) Undamaged Improvements and Betterments; . . .
(9) Real property including but not limited to building, doors and windows which are your responsibility to insure under any contract.

5

*also* Zheng Deposition at 31:12–14; Request for Admission Responses [DN 25-4] at 4, no. 3 (admission that Kabuki does not own the units). Because the HVAC units are not Kabuki's personal property, subsection 7 of the insurance policy does not cover them.

Kabuki's efforts to locate a contractual obligation to insure elsewhere in the lease are unavailing. In section 6.1, Kabuki took on potentially significant maintenance obligations for the "heating, air conditioning and ventilation systems," including the obligation to "mak[e] replacements when necessary." Lease [DN 25-2] at 8, § 6.1. Kabuki suggests it makes no sense that the lease would impose an obligation to maintain HVAC units that Kabuki did not own and was not required to insure. But the language is clear: Section 6.1 of the lease addresses maintenance, while subsection 7 of the insurance policy refers to ownership and insurance. Imposing a maintenance duty does not work a transfer of the maintained property from the landlord to the tenant, and none of the precedents cited by Kabuki indicate otherwise.

Kabuki's extra-textual arguments fare no better. Its Opposition argues the insurance policy is ambiguous because Kabuki, its landlord, and Ohio Security all interpreted the policy differently. Opposition at 6–8. But Kabuki has not shown the insurance policy is textually ambiguous. In the first place, the parties here dispute the text of the *lease*, not the text of the *policy*. No one finds any ambiguity in the policy provision: it covers personal property that another contract requires Kabuki to insure. Absent any such linguistic ambiguity, Kabuki cannot sweep in an extrinsic game of telephone regarding what Ohio Security told Kabuki about what the landlord had to pay. *See* Opposition at 2 (discussing insurance-adjuster email). And that post-dispute comment would have no bearing on the Court's interpretation of the policy in any event. So too Kabuki's own comments

about the landlord's replacement obligations. *See* Opposition at 3. Any dispute about the meaning of the lease obligations as between Kabuki and the landlord is plainly not before the Court.

For the same reason, neither the reasonable expectations doctrine nor Kentucky's general policy favoring liberal construction of insurance contracts can overcome the plain text of the policy. The reasonable expectations doctrine provides that "the insured is entitled to all the coverage he may reasonably expect to be provided under the policy." *Nat'l Union Fire Ins. Co. v. Papa John's Int'l, Inc.*, 29 F. Supp. 3d 961, 970 (W.D. Ky. 2014) (quoting *Simons v. Continental Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986)). This provides no aid to Kabuki because courts must measure "reasonable expectations" by "construing the *policy language* as a layman would understand it." *Nat'l Union*, 29 F. Supp. 3d at 971 (emphasis added). And no policy language here could be interpreted, reasonably or not, to transform the HVAC units into Kabuki's "personal property" subject to coverage. Kabuki points to section 3.4 of the lease, which requires it to maintain comprehensive insurance coverage—specifically, $2 million in "public liability insurance." Again, however, Kabuki identifies no textual connection between this lease requirement and any text in the policy that could actually supply the coverage. The "policyholder's subjective thought process"—even assuming that were evident in the record—"is irrelevant." *Nat'l Union*, 29 F. Supp. 3d at 971.

In the same vein, although Kentucky recognizes that insurance contracts "should be liberally construed and all doubts resolved in favor of the insureds," *Ky. Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992), that general policy does not allow a court to "rewrite an insurance contract to enlarge the risk to the insurer," *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226–27 (Ky. 1994). Kabuki asks the Court to compel coverage because "the intent of having insurance is not being honored" by Ohio Security.

7

Opposition at 8.  But that argument simply begs the question whether the policy in fact covered the HVAC units.

Whatever Kabuki's subjective intentions may have been when it obtained this commercial-property coverage, those intentions—lacking an anchor in the text—cannot provide the basis for coverage.  However Kabuki, Ohio Security, and the landlord might've allocated HVAC-hail risk ex ante, they did not assign it to the insurer in subsection 7 of the Business Personal Property provision.

## ORDER

The Court **GRANTS** Ohio Security Insurance Company's motion for partial summary judgment [DN 25].  The parties have not asked the Court to resolve the remaining claims, which appear to depend on the claim addressed here.  But they may do so, consistent with this decision, at an appropriate time.

Benjamin Beaton, District Judge
United States District Court

February 16, 2021

cc:     Counsel of Record